IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02738-NRN

J.N.M.,

Plaintiff,

v.

MARTIN O'MALLEY, Commissioner of Social Security,

Defendant.

---

## OPINION AND ORDER

---

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff J.N.M.[1] was not disabled for purposes of the Social Security Act. AR[2] 27. Plaintiff has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a United States Magistrate Judge under 28 U.S.C. § 636(c). ECF No. 11.

### Standard of Review

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence. *See Krauser v.*

---

[1] Pursuant to D.C.COLO.LAPR 5.2, "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. ECF No. 9 through 9-10.

*Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011); *Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Parker v. Comm'r, SSA*, 772 F. App'x 613, 617 (10th Cir. 2019) ("If [plaintiff] is right about the legal error, we must reverse even if the agency's findings are otherwise supported by substantial evidence.").

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes a mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). However, it must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d, 1067, 1070 (10th Cir. 2007).

If the correct legal standards were applied and substantial evidence supports the findings of the Commissioner, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for

reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## Background

### I.    Procedural History

Plaintiff filed applications for disability insurance benefits and supplemental security income on June 22, 2020, alleging a disability onset date of January 1, 2020, and alleging disabling conditions of bipolar II disorder, anxiety with depression, and history of multiple concussions. AR 68–69, 84–85. Plaintiff's claims were initially denied on October 28, 2020, and denied again upon reconsideration on August 18, 2021. AR 80–81, 96–97, 117, 137. Plaintiff then requested a hearing by an ALJ, which was held on February 9, 2023. AR 37, 177. Following the hearing, the ALJ denied Plaintiff's claims on April 17, 2023. AR 17–31. Plaintiff requested that the Appeals Council ("AC") review the ALJ's decision on May 25, 2023, and the AC denied review on August 22, 2023. AR 1–5, 373. Plaintiff then filed this case seeking review of the ALJ's April 17, 2023 decision.

### II.    The ALJ's April 17, 2023 Decision

At the second step of the Commissioner's five-step sequence for making determinations,[3] the ALJ found that Plaintiff had the severe impairments of bipolar II

---

[3] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden

disorder, social anxiety disorder, generalized anxiety disorder, and posttraumatic stress disorder ("PTSD"). AR 20.

At step three, the ALJ considered the four "paragraph B" criteria, and concluded that Plaintiff had a mild limitation in understanding, remembering, or applying information, and moderate limitations in the remaining three criteria (interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself). AR 20–21. The ALJ therefore determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR, Part 404, Subpart P, Appendix 1. AR 20–22. The ALJ then determined that Plaintiff had the RFC to:

> perform a full range of work at all exertional levels with the limitations that follow: the claimant can understand, remember, and carry out simple instructions and use judgement to make simple work-related decisions. She can tolerate occasional interactions with supervisors and co-workers but can tolerate no interactions with the public. She can adapt to occasional changes in a routine work setting.

AR 22. In connection with the RFC, the ALJ discussed Plaintiff's reported symptoms, mental status examinations, medication and treatment, and reported daily activities. Regarding Plaintiff's mental limitations, the ALJ considered the medical opinions of consultative examining psychologist Immaculate Wesley, Psy.D., and state agency psychological consultants ("Agency Consultants") Andrea Szporn, Ph.D., and Joshua D. Schwartz, Ph.D.

Dr. Wesley conducted a consultative psychological evaluation of Plaintiff in October 2020. The evaluation showed some abnormalities—Plaintiff was soft spoken

---

of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

and vague when answering questions; had a depressed affect; recalled zero out of five items on a delayed memory test; displayed impaired judgment, poor abstraction, and fund of knowledge; and was unable to perform serial sevens. AR 24–25. However, Plaintiff was able to recall five of five items on an immediate memory test; "had logical and coherent thought processes; fair insight; was oriented in all spheres"; correctly spelled "world" backwards; and was able to correctly perform six digits forward and four digits backward, compute change, and perform simple arithmetic; and she presented as well-groomed in appropriate attire, with positive attitude, and was cooperative. AR 25.

Following the evaluation, Dr. Wesley opined that Plaintiff had a mild limitation in understanding, memory, and sustained concentration and a moderate limitation in persistence and pace. AR 26. The ALJ found this portion of Dr. Wesley's opinion to be persuasive. AR 26. The ALJ determined that these findings were supported by Dr. Wesley's consultative psychological evaluation, where Plaintiff performed well in some areas. AR 26. The ALJ also found that these limitations were supported by Plaintiff's reported activities of daily living, including "watching television, cleaning, preparing meals, reading emails, driving to pick up her mother, spending time with family, grocery shop, meeting all of her infant's needs and being able to perform work activity despite not having been on mental health medications at the time." AR 26–27. These mild and moderate limitations were also "consistent with the record as a whole showing objective findings of grossly intact recent and remote memory as well as attention in mental health treatment notes." AR 27.

Dr. Wesley also found that Plaintiff had a marked limitation in social interaction and adaptation. The ALJ found that this portion of the opinion was not persuasive. AR

26. The ALJ noted that Plaintiff "adapted to a new work environment and having an infant," "function[ed] sufficiently at her work and resolve[d] conflict," and "interacts with her and her infant's providers and is able to spend time with family and grocery shop." AR 27. The ALJ found that a marked limitation was not supported by Plaintiff's reported activities of daily living, nor by the fact that Plaintiff "present[ed] with a positive attitude, as cooperative, and as well-groomed in appropriate attire." AR 27. The ALJ also found that Dr. Wesley "relied primarily on the claimant's subjective statements indicative of what Dr. Wesley noted to be severe social anxiety and employment difficulties." AR 27. The ALJ determined that those subjective statements were unsupported by Dr. Wesley's objective findings and inconsistent with the record as a whole, including Plaintiff's other activities such as "driving or being able to utilize light rail; caring for her baby for most of the day and by herself; and engaging in a period of work activity for Prime Now, LLC (Amazon), during which the claimant reported being able to manage conflict there." AR 27.

The ALJ then discussed the opinions of the Agency Consultants. In discussing the "Paragraph B" criteria, Dr. Szporn opined that Plaintiff had a mild limitation in understanding, remembering, or applying information; moderate limitations in concentrating, persisting, or maintaining pace and adapting or managing oneself; and a marked limitation in interacting with others. AR 27, 74, 90. Like Dr. Szporn, in discussing the "Paragraph B" criteria, Dr. Schwartz found that Plaintiff had a mild limitation in understanding, remembering, or applying information, and moderate limitations in concentrating, persisting, or maintaining pace and adapting or managing oneself. AR 27, 108, 128. However, Dr. Schwartz found that Plaintiff had only a

moderate limitation in interacting with others. AR 27, 108, 128. The ALJ found Dr. Schwartz's "Paragraph B" findings to be more persuasive than Dr. Szporn's because they are "more consistent with the record as a whole" and "[a]long these lines, for the reasons set forth above in discussing Dr. Wesley's medical opinion, this does not support a finding of marked mental functioning limitations." AR 28.

The ALJ noted that, in terms of Plaintiff's RFC, both of the Agency Consultants "found that the claimant can follow only simple instructions, sustain only ordinary routines, and make only simple work-related decisions; that she cannot work closely with supervisors or coworkers and can accept supervision and relate to coworkers only if the contact is not frequent or prolonged; and that she should avoid working with the general public." AR 27, 79, 95, 111–114, 131–134. The ALJ found that these opinions regarding Plaintiff's RFC were persuasive because they were consistent with the record as a whole and were supported by "explanation such as the claimant having some presentations with unremarkable objective findings and activities of daily living that have included being able to make simple meals, shop in stores, and clean up." AR 28.

At step four, the ALJ found that Plaintiff had past relevant work as a housekeeping cleaner, municipal worker, cafeteria food service worker, industrial cleaner, hand packager, receptionist, home attendant, and order selector. AR 28–29. The vocational expert ("VE") testified that someone with the same RFC as Plaintiff could perform the jobs of housekeeping cleaner, industrial cleaner, hand packager, and order selector. AR 29. The ALJ then concluded that Plaintiff was capable of performing this past relevant work as it is generally performed and as Plaintiff actually performed it. AR 29.

At step five, the ALJ made an alternative finding. The VE testified that someone with the same RFC, age, education, and work experience as Plaintiff could perform the jobs of small product assembler, machine operator, and laundry worker. AR 30. The ALJ therefore concluded that considering Plaintiff's age, education, work experience, and RFC, Plaintiff is capable of making a successful adjustment to other jobs that exist in significant numbers in the national economy. AR 30. Accordingly, the ALJ determined that Plaintiff was not disabled from January 1, 2020 through the date of decision. AR 30.

## Analysis

The Court addresses Plaintiff's various arguments below. First, Plaintiff argues that the ALJ should have incorporated a marked limitation in social functioning into Plaintiff's RFC, consistent with Dr. Wesley's opinion.

Second, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's reported symptoms.

Lastly, the Court addresses Plaintiff's brief argument that the ALJ failed to incorporate (or discuss the omission of) certain RFC limitations in the Agency Consultants' opinions, despite finding these opinions to be persuasive; and addresses Plaintiff's related argument that the ALJ's finding that she could perform her past relevant work was not supported by substantial evidence.

**I.    Dr. Wesley's Opinion Regarding Marked Limitation in Social Functioning**

An ALJ's decision must "articulate . . . how persuasive [the ALJ] find[s] all of the medical opinions and all of the prior administrative medical findings" in the case record. 20 C.F.R. § 404.1520c(b). In making this determination, the ALJ must consider the following factors: supportability, consistency, relationship with the claimant, length of the

treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship, specialization, and other factors. *Id.* § 404.1520c(c). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Harrison v. Comm'r, SSA*, No. 22-4108, 2024 WL 1856553, at *5 (10th Cir. Apr. 29, 2024) (quoting Social Security Ruling "SSR" 96-8P, 1996 WL 374184, at *7 (July 2, 1996)).

As summarized above, after conducting a consultative psychological examination of Plaintiff in October 2020, Dr. Wesley opined that Plaintiff had mild limitations in understanding, memory, and sustained concentration, moderate limitations in persistence and pace, and marked limitation in social interaction and adaptation. The ALJ found the mild and moderate limitations persuasive, but the marked limitations unpersuasive. Plaintiff argues that the ALJ erred in failing to provide a coherent explanation for discounting this part of Dr. Wesley's opinion. She argues that while the ALJ concluded that Plaintiff did not have marked limitations in social functioning because she was able to adapt to a new work environment and have a baby, this conclusion is contradicted by record evidence showing that Plaintiff was terminated from two jobs and was only able to work at another job with special employment support who helped Plaintiff manage conflict. ECF No. 12 at 11–12. However, the record indicates that Plaintiff was terminated from one job because she was unable to clean the number of rooms required and was terminated from another job at Amazon because she was not moving quickly enough, was unable to work the minimum hours, and her pregnancy interfered with certain job functions. ECF No. 12 at 11–12; AR 871, 1087. Plaintiff does

not articulate why the two terminations are relevant to Plaintiff's level of limitation in social functioning. It is also unclear why Plaintiff's use of employment support services should have led the ALJ to conclude that Plaintiff had a marked limitation in social functioning, as the record indicates that the employment support *enabled* Plaintiff to manage conflict. AR 1051 ("Therapist and [Plaintiff] discussed how she is managing conflict at work and how [Plaintiff] is grateful for her employment support."). The ALJ took note of this in her decision. AR 25 (noting that Plaintiff "reported that she liked this job and was able to manage conflict there," and that she was later terminated for reasons unrelated to managing conflict).

Plaintiff further argues that the ALJ erroneously failed to discuss evidence that she still had mood swings and difficulty working with others. ECF No. 12 at 12. But the ALJ considered and discussed Plaintiff's mood swings. AR 23 ("[Plaintiff] testified to being unable to maintain work on a full-time basis due to mental symptoms of anxiety, depression, and severe mood swings."); AR 24 (discussing how Plaintiff reported having fewer mood swings after resuming her prescribed dose of Lamictal). The ALJ also discussed at length Plaintiff's difficulty working with others. AR 21 (describing how Plaintiff was previously placed on leave from work after a conflict with a customer, and that she had a verbal altercation with a store employee). The ALJ also discussed Plaintiff's numerous mental examinations, ultimately concluding that "despite some ongoing abnormalities in terms of mood and affect during the course of mental health treatment, such as the claimant having dysthymic affect or being tearful, as well as some mention at times of tangential and disorganized thoughts, other objective findings on mental status examinations have been largely unremarkable." AR 24. "The record

must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citation omitted). With respect to Plaintiff's mood swings and difficulty working with others, the ALJ's decision indicates that the ALJ appropriately considered all the evidence.

Ultimately, the Court finds that the ALJ provided a coherent explanation for concluding that Plaintiff had only a moderate limitation in social functioning. The ALJ explained that she did not find Dr. Wesley's opinion that Plaintiff was markedly limited in social functioning to be persuasive because the ALJ observed that Plaintiff was able to adapt to a new work environments and to having an infant, to sufficiently resolve conflict at work, to interact with her and her infant's providers, to spend time with family, to grocery shop, and to present as positive, cooperative, and well-groomed. AR 27. The Court cannot reweigh the evidence or substitute its judgment for the ALJ's, and the Court finds that the ALJ provided adequate explanation for concluding that Plaintiff does not have a marked limitation in social functioning. *Lax*, 489 F.3d at 1084 (10th Cir. 2007); *Mileto v. Comm'r, SSA*, No. 21-1403, 2022 WL 17883809, at *4 (10th Cir. Dec. 23, 2022) (affirming ALJ's finding that a doctor's opinion regarding marked mental limitations was not persuasive because it was not consistent with the claimant's other normal mental status exams and was not supported by the doctor's mental status examination findings).

## II.    Evaluation of Plaintiff's Reported Symptoms

The ALJ must "consider all [Plaintiff's] symptoms . . . and the extent to which [Plaintiff's] symptoms can reasonably be accepted as consistent with the objective

medical evidence and other evidence." 20 C.F.R. § 404.1529(a). The ALJ must implement a two-step process for evaluating a claimant's reported symptoms. First, the ALJ determines whether a claimant has "a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* Here, the ALJ did conclude that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms. AR 23.

Second, the ALJ "must then evaluate the intensity and persistence of [the claimant's] symptoms [in order to] determine how [the claimant's] symptoms limit [the claimant's] capacity for work." *Id.* § 404.1529(c)(1). The ALJ first considers whether a fully favorable disability determination can be made based solely on objective medical evidence. SSR 16-3P, 2017 WL 5180304, at *6 (Oct. 25, 2017). If not, the ALJ will "carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms " *Id.*

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

*Id.* at *4. The ALJ should consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence . . . ." 20 C.F.R. § 404.1529(c)(4). An ALJ should not "reject [a claimant's] statements about the intensity and persistence of . . . symptoms or about the effect [the claimant's] symptoms have on [the claimant's] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements." *Id.* § 404.1529(c)(2).

a. **Analysis**

Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ incorrectly evaluated Plaintiff's statements regarding the intensity and persistence of her symptoms—in particular, her inability to socialize and interact. ECF No. 12 at 17. Plaintiff further argues that her testimony about her symptoms was supported by the record and, therefore, the ALJ erred in concluding that that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms regarding her inability to socialize and interact were not entirely consistent with the record evidence. *Id.*

In response, the Commissioner argues that the ALJ provided a thorough and reasoned explanation for finding that some of Plaintiff's reported symptoms regarding her inability to socialize and interact were not entirely consistent with the evidence of record. ECF No. 13 at 11. The Commissioner further argues that the medical records that Plaintiff cites in support of these symptoms are largely her own subjective complaints. *Id.* Upon review of the record, the Court agrees with the Commissioner, and finds that the ALJ's evaluation of the intensity and persistence of Plaintiff's symptoms was supported by substantial evidence.

i. **Prescribed Medication and Therapy**

Plaintiff points to her February 2023 hearing testimony that she has met with a therapist twice a month and a psychiatrist every other month since November 2022. AR 50. She testified that she went off all her medications when she was pregnant, resumed them a couple of weeks before the ALJ hearing, and had not noticed a difference at the time of the hearing. AR 50. Records show that Plaintiff obtained counseling and had a

treatment plan in March 2020 to work on Plaintiff's reported "crazy emotions/feelings/thoughts/actions," and Plaintiff had a stated goal of "feel[ing] more relaxed and less anxious so it no longer interferes with [her] ability to get a job, socialization." AR 491, 493.

The ALJ noted evidence in the record that mental health medications and counseling have been helpful to Plaintiff. AR 24 (citing AR 392 (Plaintiff reported "no changes to mental health, attending appointments, and doing well" in July 2020), 515 (Plaintiff reported fewer mood swings and feeling much better after resuming her normal dose of Lamictal in July 2020)). The ALJ also noted that Plaintiff had some medication non-compliance prior to her pregnancy in 2022, was at times inconsistent in her attendance at mental health counseling, and that these lapses often corresponded with increased negative symptoms. AR 24 (citing AR 427 (provider letter from January 2020 stating that Plaintiff may be discharged from the program for nonattendance), 406 (Plaintiff was not consistently attending therapy as of June 2020), 519 (June 2020 note that Plaintiff was inconsistent with when she took medication), 515 (July 2020 note that Plaintiff had missed counseling appointment), 775 (March 2021 note that Plaintiff did not attend past two therapy appointments, and prior to that had not attended since December 2020), 671 (In November 2021, Plaintiff reported some days missing her medication or taking them at varying times)). The Court concludes that the ALJ's decision to discount Plaintiff's symptom testimony due to periodic noncompliance with prescribed treatment was supported by substantial evidence. *See Romero v. Astrue*, 242 F. App'x 536, 543 (10th Cir. 2007) (holding that ALJ's decision to discount the claimant's credibility regarding her subjective complaints was supported by substantial

evidence where ALJ relied in part on evidence of the claimant's repeated non-compliance with medical advice).

### ii. Evidence Regarding Intensity, Persistence, and Limiting Effects of Plaintiff's Symptoms

Plaintiff further points to her testimony and other evidence regarding the intensity, persistence, and limiting effects of her symptoms regarding socialization. Plaintiff points to multiple instances where providers noted Plaintiff's depressed mood. *See* AR 386, 401, 404–06, 515. On November 18, 2020, Plaintiff reported that she experienced mood swings and felt crabby, sad, and discouraged; that on her bad days (which were five days per week) she would sit in the living room on the couch for most of the day; that she prefers not to get dressed and would not shower for multiple days; and that she would only go out alone 25 percent of the time because her "mind is a whirlwind and thinks of bad things that are or could be happening." AR 311–12. In a psychotherapy appointment on December 15, 2020, a provider wrote that Plaintiff "identified recognizing that becoming overwhelmed is a pattern for her, and when it becomes too extreme it 'boils over and [she] melt[s] down." AR 810. As of November 16, 2021, a provider noted that Plaintiff "states that she still has up and down mood, with moments of anger, irritability, feeling depressed." AR 671. On January 12, 2022, Plaintiff reported struggling with "cognitive and forgetfulness," "endorsed symptoms of anxiety and depression," and "was tearful at times throughout the appointment." AR 651. On January 27, 2022, a provider observed that Plaintiff "laughed at inappropriate times." AR 646.

Contrary to Plaintiff's contentions, the ALJ considered the record and reasonably concluded that Plaintiff's symptoms were less severe than claimed. The ALJ recognized

that Plaintiff had some ongoing abnormalities in mood and affect which were documented throughout her mental health treatment, but also noted that many of these mental status exams were otherwise normal, including that she was appropriately groomed, alert and oriented, had appropriate behavior and no abnormal motor activity, had normal rate and volume of speech, linear and coherent thought process, fair insight and judgment and intact recent and remote memory and grossly intact or appropriate fund of knowledge. AR 24 (citing AR 661 (normal exam but for dysthymic affect and "all over the place" mood in January 2022), 640 (normal exam but for dysthymic affect and "stressed" mood in February 2022), 949 (normal exam but for dysthymic affect and "down" mood in April 2022), 1148 (normal exam but for dysthymic affect and "up and down" mood in January 2023)). The ALJ further noted that Plaintiff also had multiple mental status exams showing normal mood and/or normal affect. AR 24 (citing AR 845–46 (normal exam, including fine mood and full range of affect appropriate to content, in October 2020), 804–05 (normal exam, including "better okay" mood and full range of affect appropriate to content, in December 2020), 727 (normal exam, including full range of affect appropriate to content, but for "up and down" mood in June 2021), 716 (normal exam, including "fine" mood and euthymic affect, in September 2021), 673 (normal exam, including "calm" affect, but for "up and down" mood in November 2021)). The ALJ's decision also assessed Plaintiff's activities of daily living, concluding that some of these activities showed an intact ability to stay focused or concentrate. AR 25 (activities included organizing a move, washing clothes at a laundromat, independently caring for her infant daughter, driving her mother places, using the light rail when her

car was not working, watching television, cleaning up, preparing meals, reading emails, showering, cooking, dressing, handling and managing funds, and grocery shopping).

The Court finds that the ALJ weighed the evidence and reasonably concluded that Plaintiff's symptoms were less severe than her hearing testimony indicated.

### iii. Evidence Regarding Impact of Plaintiff's Symptoms on her Ability to Work

Plaintiff further argues that the ALJ disregarded record evidence regarding how her symptoms negatively impacted her ability to work. Plaintiff testified that she did not believe that she could work full-time because of her extreme mood swings, anxiety, and depression. AR 52. She testified that she would occasionally have issues at work when she would get frustrated, upset, make things up, blurt out profanity, or walk out and quit in an extreme scenario. AR 53. She reported difficulty with staying focused, concentrating on the task at hand, strategizing properly, and counting. AR 54. She said she has worked a lot of jobs for less than a year because when her symptoms would kick in, she would get frustrated and leave. AR 55. On February 1, 2022, Plaintiff had "some focus difficulties" and "ongoing depression," and "[f]eels frustrated that she has not been able to hold a job due to manic episodes." AR 639.

The ALJ noted that Plaintiff was enrolled in employment services in order to help her find part-time employment, interviewed for jobs, and was offered and declined job offers. AR 25. Indeed, the record indicates that Plaintiff entered into a Supported Employment Treatment Plan through WellPower in July 2022, with a goal of keeping her Amazon job for at least six months and improving her speed and time management. AR 1062. Plaintiff was terminated from Amazon in August 2022 because she was not moving quickly enough, did not get the minimum hours, and her pregnancy was

interfering with utilizing the carts and bending. AR 1087. On September 20, 2022, Plaintiff chose to leave the employment support program as Plaintiff "has a lot going on right now and decided that working with employment isn't right for her at the moment." AR 1110. The ALJ recognized that Plaintiff was terminated from her job at Amazon for physical reasons unrelated to her social functioning, she was advised she could reapply with accommodations, and she testified that she possibly could have continued working there had she not been pregnant. AR 25.

Upon review of the record, the Court concludes that the ALJ weighed the evidence and reasonably concluded that Plaintiff's symptoms did not impact her ability to work as severely as Plaintiff's hearing testimony indicated. *See Cowan v. Astrue*, 552 F.3d 1182, 1191 (10th Cir. 2008) (holding that ALJ linked credibility determination to substantial evidence where the ALJ noted that the fact that a claimant previously worked with certain impairments suggested that those impairments would not currently prevent work).

III.    **Evaluation of the Agency Consultants' Opinions**

Plaintiff briefly argues that the ALJ failed to incorporate the RFC limitations from the Agency Consultants' opinions that "Plaintiff's pace was too slow to keep working as a housekeeper, she had social anxiety and mood fluctuations, can follow simple instructions, sustain ordinary routines and make simple work related decisions, she cannot work closely with supervisors or coworkers, and should avoid working with general public." ECF No. 12 at 12. Plaintiff argues that because the ALJ found these

opinions to be persuasive, she should have incorporated them into the RFC.[4] In a supplemental brief, Plaintiff further argues that the ALJ failed to explain her reasons for omitting these limitations from the RFC. ECF No. 19 at 2.

As an initial matter of clarification and to narrow the issues to be discussed here, the Court observes that the ALJ's RFC does in fact limit Plaintiff to "understand, remember, and carry out simple instructions and use judgement to make simple work-related decision," to "occasional interactions with supervisors and co-workers," and "no interactions with the public." AR 22. It further limits Plaintiff to only "occasional changes in a routine work setting." AR 22. Accordingly, the only portions of the Agency Consultants' opined RFC limitations which Plaintiff argues are not incorporated into the RFC are that Plaintiff's pace was too slow to work as a housekeeper.

The Commissioner argues that, after finding the Agency Consultants' opinions to be persuasive as to the opined RFC limitations, the ALJ adequately incorporated these RFC limitations into the ALJ's RFC. The Commissioner argues that because the ALJ "found the Section III narrative persuasive," she "assessed an RFC that limited Plaintiff to only occasional interaction with supervisors and coworkers and no interaction with the public." ECF No. 13 at 18. [5] The Commissioner agrees that "if an ALJ finds an

---

[4] The Commissioner argues that Plaintiff has waived this argument because it is an underdeveloped "hint of an argument." ECF No. 13 at 17. The Court agrees that this particular argument is little more than an afterthought in Plaintiff's opening brief—it is only a few sentences long and is embedded in another section discussing an entirely different argument. Plaintiff then attempted to further articulate this argument in a supplemental brief. ECF No. 19. Though the argument is just barely present in Plaintiff's opening brief, the Court finds that the brief has articulated the argument sufficiently for the Court's review.

[5] The Court notes that the Agency Consultants each completed a Mental Residual Functional Capacity Assessment ("MRFCA") of Plaintiff using the electronic Claims Analysis Tool ("eCAT"). AR 77, 93, 111, 131. "Prior to eCAT, consultants completed

opinion or prior administrative medical finding persuasive, he must include all of those opined limitations in the [RFC] *or* explain why any absent limitation was left out of the RFC." ECF No. 20 at 1–2 (citing SSR 96-8p, 1996 WL 374184, at *7)). However, the Commissioner argues that here, the Agency Consultants' statements that Plaintiff's pace was too slow to work as a housekeeper were not a part of their RFC assessment, but instead were a part of the Section I "checkbox" portion of the MRFC, and therefore the ALJ was not required to consider it. ECF No. 20 at 2 (citing *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) ("The [Program Operations Manual Systems] provides that Section III of the MRFCA, not Section I, is for recording a medical consultant's formal mental RFC assessment, and that adjudicators are to use the Section III narrative as the RFC assessment."). Even if the ALJ was required to consider it, the Commissioner argues that the ALJ's RFC limitation to simple tasks and limited contact with others adequately accounts for the restriction, and that although the ALJ found at steps four and five that Plaintiff could perform her past work as a housekeeper, the ALJ also identified six other jobs Plaintiff could perform.

Upon review of the record, the Court finds that the ALJ committed reversible error when she found the Agency Consultants' opinions to be persuasive as to Plaintiff's RFC, but did not include a portion of the Agency Consultants' opined RFC, and did not explain the omission.

---

special form SSA-4734-F4-SUP. That form was formally divided into Section I ("Summary Conclusions" containing checkboxes) and Section III ("Functional Capacity Assessment")." *Vienna v. Saul*, No. 2:18-CV-00783-LF, 2019 WL 4686718, at *4 n.8 (D.N.M. Sept. 26, 2019). MRFCAs completed through eCAT no longer have these section labels, but "parties and the courts have continued to refer to the checkbox portion of each MRFCA as 'Section I,' and the 'narrative' portion(s) as 'Section III.'" *Id.*

The ALJ found that the portion of the MRFCAs which contain an opinion regarding Plaintiff's RFC were persuasive. AR 28. Each form contains the prompt, "[e]xplain in narrative form the sustained concentration and persistence capacities and/or limitations," and the narrative response, "[p]ace was too slow to keep working as a housekeeper at a hotel." AR 78, 94, 113, 133. Although the Commissioner argues that this narrative text regarding slow pace is not a part of the opined RFC, this argument is belied by the instructions on the form itself. Each of the MRFCA forms filled out by the Agency Consultants state:

> [T]he actual [MRFCA] is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. *This discussion(s) is documented in the explanatory text boxes following each category of limitation* . . . . Any other assessment information deemed appropriate may be recorded in the MRFC – Additional Explanation text box.

AR 77, 93, 111, 131 (emphasis added); *see also Kim L.P. v. Saul*, No. 18-CV-552-JED-FHM, 2020 WL 5802927, at *3 (N.D. Okla. Sept. 29, 2020) ("[T]he eCAT's instructions make clear that *all* narrative responses are part of a whole and form the completing psychologist's findings regarding the claimant's functional capacity."). Accordingly, the narrative statement regarding Plaintiff's slow pace is a part of the Agency Consultants' opinions regarding RFC. *See* POMS DI 24510.060(B)(4) (It is in [Section III] that the actual mental RFC assessment is recorded explaining the conclusions indicated in section I . . . . The discussion of all mental capacities and limitations in [Section III] must be in narrative format."); *Martinez v. Kijakazi*, No. CV 21-1086 KK, 2023 WL 2662329, at *5 n.7 (D.N.M. Mar. 28, 2023) ("[W]hat is referred to as the 'Section III' narrative in case law corresponds to the narratives associated with each of the four categories and/or the narrative provided in the 'additional explanation' box.").

The ALJ appears to have only considered the contents of the "MRFC – Additional Explanation" text box, and not the Agency Consultants' other RFC opinion that Plaintiff's "[p]ace was too slow to keep working as a housekeeper at a hotel." This conclusion is supported by the fact that, consistent with the ALJ's determination that the Agency Consultants' opinions regarding RFC were persuasive, the ALJ's decision fully incorporates the RFC limitations from the "MRFC – Additional Explanation" text box. AR 79, 95, 114, 134. Additionally, the ALJ did not discuss or even acknowledge the pace issue anywhere else in her decision.

Because the ALJ held that the portions of Agency Consultants' opinions describing Plaintiff's RFC were persuasive, and because the ALJ did not explain the decision to omit the portions of these opinions that stated that Plaintiff's pace was too slow to work as a housekeeper, the ALJ's decision contains reversible error. *See* SSR 96-8P, 1996 WL 374184, at *7; *Kinney v. Comm'r of Soc. Sec.*, No. 23-3889, 2024 WL 2273365, at *3 (6th Cir. May 20, 2024) (ALJ's decision contained reversible error where ALJ found a medical provider's recommended limitations to be persuasive, but omitted a portion of the provider's opined limitations from the RFC, and did not explain the omission).

Furthermore, the hypothetical question the ALJ posed to the VE during the hearing contained no limitations regarding pace. AR 58. Accordingly, the VE's responses regarding whether Plaintiff could perform past relevant work or other jobs in the national economy must also be revisited. Notably, the VE concluded that Plaintiff *could* work as a housekeeper, and the ALJ adopted that conclusion, despite her earlier finding that the Agency Consultants' opinions regarding Plaintiff's RFC were persuasive.

## **Conclusion**

For the reasons set forth above, the Commissioner's decision is REVERSED and REMANDED for additional proceedings consistent with this opinion.

Dated this 9th day of December, 2024.    BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge